UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RAMEZ SHAMIEH and ANISSA SHAMIEH, <br><br>*Plaintiffs,*<br><br>v.<br><br>BARRY ROSENBERG, SHELLY ROSENBERG, and DOUBLE 2X USA, LLC d/b/a DESIGNER ROOFING,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ Civil Action No. 3:24-CV-0965-X |

## MEMORANDUM OPINION AND ORDER

Before the Court are plaintiffs Ramez and Anissa Shamieh's (the Shamiehs) motions to remand (Doc. 14) and to amend their complaint (Doc. 12) and defendants Barry and Shelly Rosenberg (the Rosenbergs) motion to dismiss (Doc. 24). Having considered the parties' arguments, the underlying facts, and the applicable caselaw, the Court **GRANTS** the Shamiehs' motion to remand (Doc. 14) and **FINDS AS MOOT** both their motion to amend (Doc. 12) and the Rosenbergs' motion to dismiss (Doc. 24). Accordingly, the Court **REMANDS** this case to the 134th Judicial District Court of Dallas County, Texas.

Pursuant to 28 U.S.C. § 1447(c), the Court **ORDERS** the Shamiehs to file a motion for attorneys' fees with supporting evidence within fourteen days of this Order.

1

## I.   Background

This case revolves around a home that the Shamiehs purchased from the Rosenbergs in 2022. In 2019, the Rosenbergs hired Double 2X USA d/b/a Designer Roofing (Designer Roofing) to install a new roof on the home. After Designer Roofing installed the new roof, no work was performed on it until the Shamiehs bought the home in October 2022. Upon moving in, the Shamiehs discovered water damage and mold infestation due to a faulty roof and a burst pipe from an ice storm. The Shamiehs allege the Rosenbergs hid these conditions during the sale of the home.

The Shamiehs filed suit in April 2024 against the Rosenbergs for violating the Texas Deceptive Trade Practices Act (DTPA), and for fraud, negligence, and breach of contract, and against Designer Roofing for violating the DTPA and for negligence. The Rosenbergs removed to federal Court, the Shamiehs moved for a remand back to state court, and the Rosenbergs moved to dismiss. The Court now considers the parties' motions.

## II.   Legal Standard

A party may remove a civil action from state to federal court if "the district courts of the United States have original jurisdiction."[1] To determine whether an action is removable, federal courts must consider the claims in the state court petition as they existed at the time of removal.[2] "The removing party bears the burden of

---

[1] 28 U.S.C. § 1441.

[2] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

showing that federal jurisdiction exists and that removal was proper."[3] Any ambiguity is "strictly construed in favor of remand."[4]

Federal courts have original jurisdiction over actions between citizens of different states when the amount in controversy exceeds $75,000.[5] A nondiverse defendant destroys federal diversity jurisdiction if properly joined.[6] But the court retains jurisdiction "if the removing party shows either that: (1) there was actual fraud in the pleading of jurisdictional facts; or (2) the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court."[7] The second option—called improper joinder—is at issue here.

The Fifth Circuit instructs district courts to look to its opinion in *Smallwood v. Illinois Central Railroad Co.* when determining "whether a nondiverse defendant has been improperly joined because the plaintiff has failed to state a claim against him."[8]

> A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would

---

[3] *Id.*

[4] *Id.*

[5] 28 U.S.C. § 1332(a)(1).

[6] *Int'l Energy Ventures Mgmt. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016).

[7] *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 812 (5th Cir. 2021).

[8] *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 200.

determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.[9]

The Fifth Circuit directs district courts to "apply the federal pleading standard" when determining whether a plaintiff has stated a claim against a nondiverse defendant.[10] Accordingly, the district court strips out all conclusory statements and looks to the remaining statements to determine if a claim has been adequately pled such that the claim is plausible on its face.[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12] Moreover, as the United States Supreme Court noted in *Bell Atlantic Corp. v. Twombly*, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[13]

### III.   Analysis

The parties do not dispute that the Shamiehs and Rosenbergs are diverse while the Shamiehs and Designer Roofing are not. Therefore, the Court lacks jurisdiction over this case if Designer Roofing is a properly joined defendant. If the Shamiehs brought a claim against Designer Roofing on which relief *may* be granted, Designer Roofing was properly joined.

---

[9] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (cleaned up).

[10] *Int'l Energy Ventures Mgmt..*, 818 F.3d at 208; *see also Waste Mgmt. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th Cir. 2020).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Id.*

[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

The Shamiehs brought claims against Designer Roofing for violations of the DTPA and for negligence. The Rosenbergs identify the critical questions: whether the Shamiehs' recovery from Designer Roofing is barred by (1) the economic loss rule and (2) the statute of limitations.

The Court will conduct a 12(b)(6)-type analysis to determine whether the Shamiehs have a possibility of recovery against Designer Roofing on their negligence claim. If so, Designer Roofing is properly joined and the case should be remanded to state court for adjudication. As to the scope of the Court's review, the Shamiehs attached evidence to their response to the Rosenbergs' motion to dismiss. The Rosenbergs object to those pieces of evidence which were not referenced in the opinion or part of the record in this case. The Court will not consider any evidence outside the pleadings in its analysis for the Shamiehs' motion to remand, so the Rosenbergs' objection is moot. The Rosenbergs argue that the economic loss rule precludes the Shamiehs' recovery from Designer Roofing. "The economic loss rule applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself."[14] But the "rule does not preclude tort recovery if a defective product causes physical harm to the ultimate user or consumer or other property of the user or consumer in addition to causing damage to the product itself."[15]

---

[14] *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007).

[15] *Id.*

"The acts of a party may breach duties in tort or contract alone or simultaneously in both."[16] If a party's damage extends beyond the subject of the contract itself, it is not limited to only contract damages.[17] Surely, "a party cannot avoid tort liability to the world simply by entering into a contract."[18] The Texas Supreme Court determined the economic loss rule did not preclude a homeowner's recovery in tort against a plumber who flooded their house because "[t]he plumber's duty not to flood or otherwise damage the house is independent of any obligation undertaken in its plumbing subcontract with the builder, and the damages allegedly caused by the breach of that duty extend beyond the economic loss of any anticipated benefit under the plumbing contract."[19]

So too here. The Shamiehs seek damages beyond the cost of repairing or replacing a faulty roof. They seek damages for the injury to their health and home caused by the faulty roof.[20] This extends beyond damages arising solely from the subject of the contract, and whether or not they are entitled to those damages is a matter for the state court to decide.

The Rosenbergs also contend the Shamiehs waited too long to bring suit because the statute of limitations for negligence claims is two years.[21] Designer

---

[16] *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617 (Tex. 1986).

[17] *See id.*

[18] *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).

[19] *Id.* at 718–19.

[20] In their state court complaint, the Shamiehs pled that the faulty roof "caused mold to grow in their home. Plaintiffs have suffered damage due to Defendant Designer Roofing's negligence." Doc. 1, Ex. A-2, ¶ 41.

[21] Tex. Civ. Prac. & Rem. Code § 16.003.

Roofing installed the allegedly faulty roof in February 2019, and the Shamiehs filed suit in April 2024. But the Shamiehs argue that their claim did not accrue until they contracted to buy the house in October 2022.

A "cause of action in tort generally accrues when the tort is committed, but the [Texas Supreme C]ourt has emphasized that a legal injury must be sustained, of course, before a cause of action arises."[22] Generally, "tort actions accrue, so as to start the running of limitations, when the elements of duty, breach, *and* resulting injury or damage are present."[23] The typical rule is that the statute-of-limitations timer begins when the injurious action is committed, even if the extent of the injury is not discovered until later.[24] This means any claim the Rosenbergs may have brought against Designer Roofing accrued upon replacement of the roof, but the Shamiehs suffered no injury at all until they entered the contract to purchase the home. Thus, the Shamiehs filed suit within two years of when their injury for alleged negligence accrued.

Because the Shamiehs pled a valid claim for negligence against Designer Roofing, the Court need not consider the validity of their DTPA claim.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** the Shamiehs' motion to remand (Doc. 14), **FINDS AS MOOT** the Shamiehs' motion for leave (Doc. 12), and

---

[22] *Waxler v. Household Credit Servs.*, 106 S.W.3d 277, 280 (Tex. App.—Dallas 2003, no pet.), as supplemented on denial of reh'g (June 23, 2003) (cleaned up).

[23] *Id.* (emphasis in original).

[24] *See, e.g.*, *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

**FINDS AS MOOT** the Rosenbergs' motion to dismiss (Doc. 24). Accordingly, the Court **REMANDS** this case to the 134th Judicial District Courtof Dallas County, Texas.

Pursuant to 18 U.S.C. § 1447(c), the Court **ORDERS** the Shamiehs to file a fee motion with supporting evidence within fourteen days of this Order.

**IT IS SO ORDERED** this 18th day of February, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE